Andrew A. **KARAHALEOS**, Appellant,

v.

**SECRETARY OF HEALTH, EDUCA-
TION & WELFARE.**

No. 24034.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 9, 1970.

Decided March 23, 1971.

As Amended April 1, 1971.

Mr. William H. Dempsey, Jr., Washington, D. C., for appellant.

Mr. Kenneth M. Robinson, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., John A. Terry and Lawrence S. Margolis, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, and TAMM and LEVENTHAL, Circuit Judges.

TAMM, Circuit Judge:

In this case we are asked to interpret certain provisions in the Social Security Amendments of 1965, Pub.L. No. 89–97, 79 Stat. 286. In the event our interpretation is adverse to appellant's claim, we are further requested to pass upon the constitutionality of these provisions.

Appellant Andrew A. Karahaleos is a native of Greece who came to this country in 1950, married, and became a naturalized citizen. He was employed in a hotel in Ohio until 1962, when he retired at the age of 68. On February 19, 1962, he applied for old-age benefits under the Social Security Act, and by an award dated April 9, 1962, the Social Security Administration granted him monthly benefits of $113.00.

Sometime thereafter plaintiff and his wife moved to Greece. There the couple, who were childless, decided to adopt a child. After discussion with the authorities at the public orphanage at Amalias, Greece, they decided to adopt Alexandra Stavropoulos, an illegitimate child who was born on January 18, 1964. Appellant began to contribute to Alexandra's support in 1964 but did not initiate adoption proceedings until May, 1965. By then plaintiff was contributing over half the money required to support the child. In October, 1965, Alexandra moved into the Karahaleos home and on November 26, 1965, the civil court of Amalias issued an adoption decree. Approximately four months later, on March 21, 1966, plaintiff applied for child's insurance benefits for Alexandra pursuant to section 202(d) of the Social Security Act, 42 U.S.C. § 402(d) (1964).

Under the law prevailing at the time appellant initiated adoption proceedings these benefits would have been awarded. However, on July 30, 1965—two months after the adoption process was begun and four months before it was completed, Congress added the following paragraph to section 202(d):

(10) If an individual entitled to old-age insurance benefits * * * adopts a child after such individual becomes entitled to such benefits, such child shall be deemed not to meet the requirements of clause (i) of paragraph (1) (C) of this subsection unless such child—

(A) is the natural child or stepchild of such individual (including such a child who was legally adopted by such individual), or

(B) was legally adopted by such individual before the end of the 24-month period beginning with the month after the month in which such individual became entitled to old-age insurance benefits, but only if—

(i) such child had been receiving at least one-half of his support from such individual for the year before such individual filed his application for old-age insurance benefits * * * and

(ii) either proceedings for such adoption of the child had been instituted by such individual in or before the month in which the individual filed his application for old-age insurance benefits or such adopted child was living with such individual in such month.

(42 U.S.C. § 402(d) (9) (Supp. IV, 1969)).[1] Because Alexandra was not born until after appellant became eligible for retirement benefits, Karahaleos could not possibly meet the requirements of subparagraph (B). For this reason the Social Security Administration denied his application for benefits on behalf of Alexandra.[2]

After exhausting his administrative remedies, Karahaleos sought relief in the District Court. Since there were no disputed issues of fact, both parties moved for summary judgment. The District Court judge granted defendant's motion and denied plaintiff's. This appeal followed.

Appellant's primary argument on appeal is that a savings clause applicable to section 202(d) (10) (B) entitles him to receive benefits on Alexandra's behalf. This savings clause is contained in section 323(b) of the Social Security Amendments of 1965 and reads as follows:

The amendments made by subsection (a) of this section [i. e., those adding paragraphs (9) and (10)] shall be applicable to persons who file applications, or on whose behalf applications are filed, for benefits under Section 202(d) of the Social Security Act on or after the date this section is enacted. *The time limit provided by section 202(d) (10) (B) of such Act as amended by this section for legally adopting a child shall not apply in the case of any child who is adopted before the end of the 12-month period following the month in which this section is enacted.*

(Pub.L. No. 89–97, § 323(b), 79 Stat. 398) (Emphasis added.) Karahaleos clearly meets the test of the savings clause since he adopted Alexandra within one year of the enactment of paragraph 202(d) (10). It is also clear that, having adopted Alexandra within this one year period, Karahaleos is not required to satisfy the requirement of subparagraph (B) that adoption proceedings have been completed within two years of the date he became eligible for old-age insurance benefits. The question in dispute is whether the savings clause also relieves him of the burden

---

1. Due to a later amendment, paragraph (10) of the original bill now appears in the United States Code as paragraph (9).

2. If his application had been granted, he would have received an additional $56.50 per month. 42 U.S.C. § 402(d) (2) (1964).

of meeting the requirements contained in (B) (i) and (B) (ii), as he contends it does.

This question of statutory interpretation is a most difficult one. The use of the singular term "time limit" in the savings clause suggests that the clause is meant to apply only to the requirement that adoption proceedings be completed within the 24 month "time limit" following the date the individual became entitled to old-age insurance benefits. However, the requirements in (B) (i) and (ii) also involve "time limits," and the singular term "time limit" may have been used as a kind of shorthand to refer to all three requirements. This possibility is a very real one in light of the structure of subparagraph (B). If we view the subparagraph as a unit, which must have been what Congress intended, the requirement that children be adopted within the specified 24 month period seems to be a threshold requirement which is supplemented by the requirements listed below it. The "threshold requirement" does not apply when the test of the savings clause is met, and it can be argued quite logically from this that the requirements which follow and supplement the "threshold" one also do not apply.

Because the meaning of the savings clause is not manifest from a reading of its provisions and those of subparagraph (B), we must resort to extrinsic aids to interpretation. Our attention is directed to the legislative history of the clause, which consists of the following two lines from the House and Senate Committee Reports:

> Section 323(b) of the bill provides that the new requirements (added by section 323(a)) will be effective with respect to applications for child's insurance benefits on or after the date of enactment of the bill. The requirement that adoption be completed within 2 years after the worker became entitled to benefits is not to apply in any case where a child is adopted within 1 year after the month in which the bill is enacted.

(H.R.Rep.No.213, 89th Cong., 1st Sess. 234–35 (1965); S.Rep.No.404, Part 1, 89th Cong., 1st Sess. 253 (1965).) U.S. Code Cong. & Admin.News, p. 1943. This language provides support for appellee's position that the savings clause applies only to the requirement that adoption proceedings be completed within the specified 24 month, or 2 year, period, and it was sufficient to convince the court in Economy v. Gardner, 286 F. Supp. 472 (W.D.Tex.1967), to interpret the savings clause in this way.

There is, however, a more compelling consideration than the meager legislative history of the savings clause, one apparently not raised or considered in *Economy*. This is the "cardinal principle" that "when the validity of an act of the Congress is drawn in question, and even if a serious doubt of constitutionality is raised, * * * this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." Crowell v. Benson, 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1931). The rationale for this rule is that declaring an act of Congress unconstitutional "is the gravest and most delicate duty that this Court is called on to perform." Blodgett v. Holden, 275 U.S. 142, 147–148, 48 S.Ct. 105, 107, 72 L.Ed. 206 (1927) (concurring opinion of Justice Holmes). " 'It must be evident to any one that the power to declare a legislative enactment void is one which the judge, conscious of the fallibility of the human judgment, will shrink from exercising in any case where he can conscientiously and with due regard to duty and official oath decline the responsibility'—1 Cooley, Constitutional Limitations (8th Ed.), p. 332." Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 345, 56 S.Ct. 466, 482, 80 L.Ed. 688 (1936) (concurring opinion of Justice Brandeis).

There can be no question that were we to adopt the more restrictive interpretation of the savings clause requested by appellee we would be faced with a substantial question as to whether this clause and subparagraph (B) violate the

**660**

Due Process Clause of the Fifth Amendment. These statutory provisions operate to deny benefits, permanently and automatically, to a particular class of children of parents eligible for old-age benefits, i. e., those adopted children who were adopted after their parents became entitled to old-age benefits and who do not meet the mechanical tests set forth in the savings clause and subparagraph (B). Benefits are, by contrast, granted as a matter of course to all other children of parents eligible for old-age benefits. Arguments can, of course, be made for the proposition that Congress did have rational grounds for drawing such a distinction. However, we think it is indisputable that the constitutional question presented is a serious one.

We also think the interpretation of the savings clause urged on us by appellant is a "fairly possible" one. In United States v. Shreveport Grain and Elevator Co., 287 U.S. 77, 53 S.Ct. 42, 77 L.Ed. 175 (1932), the case closest to our own on the question of interpretation, the Supreme Court refused to interpret a statute in accordance with the House and Senate Committee Reports because there were constitutional problems raised by this interpretation. Moreover, in Richmond Screw Anchor Co. v. United States, 275 U.S. 331, 48 S.Ct. 194, 72 L.Ed. 303 (1928) and United States v. Jin Fuey Moy, 241 U.S. 394, 36 S.Ct. 658, 60 L.Ed. 1061 (1916), among others, the Court went very far in interpreting statutory language so as to avoid doubts as to the constitutionality of the statutes involved.

In view of these precedents, we interpret the savings clause to mean that adopted children of parents entitled to old-age benefits are eligible for child's insurance benefits if they were adopted within one year of the date section 202 (d) (10) was enacted. Since appellant Karahaleos adopted Alexandra within this one year period, we hold that he is entitled to benefits on her behalf.

Reversed.