Tynell T. **STANTON**, By and Through her father and next friend, William H. Stanton, Plaintiff-Appellant,

v.

Caspar **WEINBERGER**, Secretary of Health, Education and Welfare, Defendant-Appellee.

No. 73–1959.

United States Court of Appeals, Tenth Circuit.

Argued July 11, 1974.

Decided Sept. 3, 1974.

---

Frederick P. Charleston and Jon S. Nicholls, Denver, Colo., for plaintiff-appellant.

John K. Villa, Atty., Dept. of Justice (Irving Jaffe, Acting Asst. Atty. Gen., and James L. Treece, U. S. Atty., on the brief), for defendant-appellee.

Before BREITENSTEIN, McWILLIAMS and BARRETT, Circuit Judges.

BREITENSTEIN, Circuit Judge.

The Secretary of Health, Education and Welfare denied the application of plaintiff-appellant Tynell T. Stanton for child's insurance benefits under the Social Security Act. See 42 U.S.C. § 402(d). The issues relate to the applicability and constitutionality of certain 1965 amendments to the Act. The district court upheld the Secretary. We affirm.

The facts are not in dispute. The worker, William H. Stanton, applied for, and was found entitled to, the old-age insurance benefits of the Act in December, 1963. Plaintiff Tynell, the grand-niece of the worker, was born February 9, 1965, was equitably adopted by the worker in March, 1965, and was legally adopted on September 1, 1971. Application for child's insurance benefits was filed July 29, 1971.

So far as pertinent, the basic eligibility requirements of the Act, § 202(d)(1)(A) and (C), 42 U.S.C. § 402(d)(1)(A) and (C), provide that a child of a worker receiving old-age benefits shall receive child's benefits if he "has filed application for child's insurance benefits" and "was dependent upon such individual * * * at the time such application was filed."

The Act of July 30, 1965, Pub. L. 89–97, 79 Stat. 286, by its § 323 added paragraph (9) to § 202(d).[1] It is there provided, § 202(d)(9), that when a worker entitled to old-age benefits adopts a child after the worker becomes entitled to benefits, the child is not eligible unless—

\*       \*       \*       \*       \*       \*

(B) [the child] was legally adopted by such individual before the end of the 24-month period beginning with the month after the month in which such individual became entitled to old-age insurance benefits, but only if

(i) such child had been receiving at least one-half of his support from such individual for the year before such individual filed his application for old-age insurance benefits \* \* \*, and

(ii) either proceedings for such adoption of the child had been instituted by such individual in or before the month in which the individual filed his application for old-age insurance benefits or such adopted child was living with such individual in such month."

The child with whom we are concerned cannot satisfy the requirements of paragraph (9)(B)(i) and (ii) because she was born after the worker's entitlement to old-age benefits.

Counsel for the child say that the 1965 amendments do not apply because of the provisions of § 323(b) of the enacting legislation, 79 Stat. 398. That subsection has two sentences which must be considered separately. The first is:

"The amendments made by subsection (a) of this section shall be applicable to persons who file applications, or on whose behalf applications are filed, for the benefits under section 202(d) of the Social Security Act on

---

1. When originally enacted in 1965, the provisions in question were found in § 202(d)(10) of the Act. At the time of the administrative proceedings herein, they were codified as 42 U.S.C. § 402(d)(9). The Social Security Amendments of 1972, Pub.L. 92–603, which are not applicable herein, moved these provisions, as amended, to § 202(d)(8) of the Act, 42 U.S.C. § 402(d)(8) (pocket part). Herein reference will be made to § 202(d)(9).

or after the date this section is enacted."

The plain and unambiguous language makes the amendments applicable to applications filed after the section "is enacted." Any doubt on this score is dispelled by the legislative history which shows an intent that the new requirements affect applications "on or after the date of the enactment of the bill." S. Rep. No. 404, 89th Cong., 1st Sess., 1 U.S.Cong. & Admin.News '65 at p. 2193. The effective date was July 30, 1965. We are concerned with an application filed July 29, 1971.

■ Claimant argues that she was entitled to the benefits under the law as it existed before 1965 and that the application of the amendments deprives her of due process. The Secretary does not dispute the claim that if the child had filed application for benefits between March, 1965, when equitable adoption occurred, and July 30, 1965, the effective date of the amendments, she would have been entitled to those benefits. The difficulty is that the pre-existing law required the filing of an application for the benefits and none was filed during the critical period. See 42 U.S.C. § 402(d) (1964 ed.). At the most the child had an expectation, not a vested right. In Flemming v. Nestor, 363 U.S. 603, 611, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435, the Court said that " a person covered by the Act has not such a right in benefit payments as would make every defeasance of 'accrued' interests violative of the Due Process Clause of the Fifth Amendment." Richardson v. Belcher, 404 U.S. 78, 80, 92 S.Ct. 254, 257, 30 L.Ed.2d 231, holds that "an expectation of public benfits [does not] confer a contractual right to receive the expected amounts." The child's reliance on Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287, is misplaced. That decision holds that as a matter of procedural due process the interest of a welfare recipient in the continued payment of benefits may not be terminated without an evidentiary hearing. The Richardson case says that, 404 U.S. at 81, 92 S.Ct. at 257, Goldberg cannot "be stretched to impose a constitutional limitation on the power of Congress to make substantive changes in the law of entitlement to public benefits." The congressionally mandated application of the 1965 amendments to applications filed after the effective date has no constitutional impediment.

The second sentence of § 323(b) is a savings clause which reads:

"The time limit provided by section 202(d)(10)(B) [Codified as 42 U.S.C. 402(d)(9)(B); see fn. supra] of such Act as amended by this section for legally adopting a child shall not apply in the case of any child who is adopted before the end of the 12-month period following the month in which this section is enacted."

The question is the effect of the quoted provision on the eligibility of the child before us. The worker applied for, and received, old-age benefits in December, 1963. The child was equitably adopted in March, 1965. Colorado recognizes equitable adoption. Barlow v. Barlow, Colo., 463 P.2d 305, 308–309.

■ Subparagraph (9)(B) requires adoption before the end of a 24-month period beginning a month after the worker became entitled to benefits. The savings clause makes this provision inapplicable to a child adopted before the end of a 12-month period beginning a month after enactment of the amendments. The use in § 323 of the word "before" indicates a deadline rather than a period within which adoption must occur. In the instant case the child was adopted before expiration of both the 24-month and the 12-month periods. Hence, the rights of the child are saved unless lost by nonconformity with subparagraphs (i) and (ii) of paragraph (9)(B).

Subparagraph (i) requires that the child receive at least one-half of his support from the worker for the year before the worker's application for old-age benefits, and (ii) requires either adoption proceedings in or before the month

of the old-age benefit application or residence of the child within that month. Neither requirement can be met here because the child was not then born.

■ The argument for the child is that the savings clause eliminates the necessity of compliance with subparagraphs (i) and (ii). We do not agree. Section 323 refers to the "time limit" provided in paragraph (9)(B). There is only one time limit therein, the mentioned 24-month period after the worker became entitled to old-age benefits. The applicable provisions of subparagraphs (i) and (ii) refer respectively to amount of support from, and period of life with, the worker, Neither is a "time limit" for "legally adopting a child." Hence, the savings clause does not eliminate need for compliance with them.

This conclusion is supported by legislative history. Senate Report No. 404 recognizes the problem arising from the then pertinent law and says that thereunder "a child adopted by a worker who is already retired and getting old-age insurance benefits can become entitled to benefits even though he was not dependent on the worker at the time the latter retired." 1 U.S. Cong. & Admin. News '65 p. 2048. See also H.Rep. 92–231 on Pub.L. 92–603, Social Security Amendments of 1972, 3 U.S.Cong. & Admin. News '72 p. 5039.

The proposed solution of the problem required that (1) the adoption be completed within two years after the worker became entitled to benefits; (2) the child receive at least one-half of his support from the worker for one year before the worker became entitled to the benefits; and (3) the child be living with the worker when that person became entitled to the benefits, or that adoption proceedings have begun. 1 U.S.Cong. & Admin.News '65 pp. 2048–2049.

The Senate Report further says, Ibid, at p. 2193, that, the savings clause, § 323(b), applies only to the first of the three new requirements:

"Section 323(b) of the bill provides that the new requirements (added by Section 323(a) will be effective with respect to applications for child's insurance benefits on or after the date of enactment of the bill. The requirement that adoption be completed within 2 years after the worker became entitled to benefits is not to apply in any case where a child is adopted within 1 year after the month in which the bill is enacted."

We read § 323 to mean that subparagraphs (i) and (ii) of § 202(d)(9)(B) apply to the case before us and, in the absence of constitutional infirmity, deprive the child of the sought benefits because she cannot meet their requirements. This construction of the statute is supported by Economy v. Gardner, W. D.Tex., 286 F.Supp. 472, 474, affirmed 5 Cir., 396 F.2d 115.

To sustain her construction of the savings clause the child relies on Karahaleos v. Secretary of Health, Education and Welfare, 144 U.S.App.D.C. 181, 445 F.2d 657. That decision recognizes that legislative history bolsters the Secretary's position, but rejects it on the ground that its acceptance would raise a substantial due process question. Ibid, at 659–660. The court says that the interpretation of the savings clause urged upon it (elimination of the requirements of subparagraphs (i) and (ii)) is a "fairly possible one," Ibid, at 660, and adopts that interpretation. The case does not discuss the merits of the claim of unconstitutionality which arises if the savings clause is interpreted in accordance with our views.

■ The child's argument for unconstitutionality is based on the claim of invidious discrimination against adopted children. See Stanley v. Secretary of Health, Education and Welfare, W.D. Mo., 356 F.Supp. 793, 804–806. Reliance is placed on both due process and equal protection. We have already rejected the argument that the 1965 amendments divested the child of an accrued interest in violation of due process.

Flemming v. Nestor, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435, was concerned with a due process argument relating to classifications established by nonentitlement provisions of the Act affecting aliens. The Court said, Ibid, at 611, 80 S.Ct. at 1373:

> "Particularly when we deal with a withholding of a noncontractual benefit under a social welfare program such as this, we must recognize that the Due Process Clause can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification."

Under the rubric of equal protection, Richardson, 404 U.S. at 81, 92 S.Ct. at 257, 30 L.Ed.2d 231, cites with approval Dandridge v. Williams, 397 U.S. 471, 487, 90 S.Ct. 1153, 25 L.Ed.2d 491, and says that a statutory classification in the area of social welfare is consistent with the Equal Protection Clause of the Fourteenth Amendment if it is "rationally based and free from invidious discrimination." The Court goes on to say that:

> "While the present case, involving as it does a federal statute, does not directly implicate the Fourteenth Amendment's Equal Protection Clause, a classification that meets the test articulated in *Dandridge* is perforce consistent with the due process requirement of the Fifth Amendment."

The Secretary says that the attacked provisions relating to adopted children are rational because the purpose is (1) to replace lost support when a worker becomes retired or disabled, and (2) to prevent spurious claims. Jimenez v. Weinberger, 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363, was concerned with the rationality of a distinction made by the Social Security Act between two classes of illegitimate children. The decision mentions the position of the Secretary that the purpose was to provide lost support, Ibid, at 633, 94 S.Ct. 2496, and holds that the legislative lines drawn by Congress refute that general principle in the context of illegitimacy. We are concerned with adoption. The intent of Congress to prevent abuse of the Act by adoption after entitlement to old-age benefits is shown by the statement in S. Rep. p. 404, 1 U.S.Cong. & Admin.News '65 p. 2048, that:

> "The committee believes that the provisions concerning adoptions by retired workers should be made comparable to those relating to adoptions in other cases so as to provide safeguards against abuse through adoption of children solely to qualify them for benefits, * * * ."

As said in Hagler v. Finch, 9 Cir., 451 F.2d 45, 48:

> " * * * Congress thought that one who makes the decision to adopt when he is already receiving Social Security payments is more likely to be motivated by economic considerations instead of genuine concern for a child's welfare."

Jimenez recognizes a legitimate governmental interest in the prevention of spurious claims. 417 U.S. at 636, 94 S.Ct. 2496. A classification designed to prevent claims of that nature has a rational basis and is not invidious. Congress saw a need to provide safeguards against abuse through adoption. The method adopted in the 1965 amendments is reasonable. In our opinion the different treatment given adopted children does not run afoul of either due process or equal protection requirements.

Affirmed.