**Bessie TSOSIE, Plaintiff-Appellant,**

v.

**Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Defendant-Appellee.**

No. 75–3195.

United States Court of Appeals, Ninth Circuit.

Submitted Feb. 8, 1978.

Decided July 22, 1980.

Rehearing Denied Nov. 3, 1980.

Robert N. Hilgendorf, Santa Fe, N. M., for plaintiff-appellant.

Michael F. Hertz, Atty., Dept. of Justice, Washington, D. C., for defendant-appellee.

Before WALLACE and KENNEDY, Circuit Judges, and S. WILLIAMS,* District Judge.

KENNEDY, Circuit Judge:

Appellant Bessie Tsosie contests the denial of child's insurance benefits under the Social Security Act to a child adopted by her after the death of the eligible wage earner. Tsosie asserts that the district court erroneously construed the relevant statute, 42 U.S.C. § 416(e), to deny benefits. In the alternative, she contends that the statute violates the child's due process rights under the fifth amendment by allegedly adopting an impermissible classification. Because 42 U.S.C. § 416(e) clearly mandates denial of benefits in this case and because appellant has not demonstrated that the statute denies any right by reason of the statutory classification scheme, the district court's order granting summary judgment to the Government is affirmed.

Alfred Keese, the child-claimant in this case, was born August 2, 1959 to Kee Keese and Mary Keese. When the child was six months old, his parents sent him to live with his aunt and uncle, Bessie and Frank Tsosie. When Alfred was four, the Tsosies petitioned to adopt him. That petition was denied and dismissed in 1965 when the natural parents withdrew their consent to the adoption. At that time, the trial court of the Navajo Tribe appointed the Tsosies to be Alfred's guardians. The child was still under the guardianship of the Tsosies when Frank died, in 1971. Shortly after Frank's death, Bessie Tsosie again petitioned to adopt Alfred. Her petition was granted on November 14, 1972.

Alfred received benefits from the state Aid to Families with Dependent Children program from June 1971 to March 1972, a period four months preceding and five months following Frank's death. The amount of these benefits was $37.00 per month, and the benefits were terminated in March 1972 due to a change in policy of the

---

* Honorable Spencer Williams, United States District Judge for the Northern District of California, sitting by designation.

Arizona Department of Welfare. Alfred received an additional $6.20 per month in social security benefits on the account of his natural father, Kee Keese. Thus, at the time Frank died, Alfred was receiving $43.20 a month in total support benefits.

Following Frank Tsosie's death and shortly after her adoption petition was granted, Bessie Tsosie filed an application for mother's Social Security insurance benefits and for child's insurance benefits on behalf of Alfred. Under 42 U.S.C. § 402(g)(1)(E), the widow of a fully insured wage earner is entitled to mother's insurance benefits if, at the time she filed an application for benefits, she had in her care an individual entitled to child's insurance benefits. An individual is entitled to child's insurance benefits if he was a "child" of the wage earner, as defined by § 416(e), and dependent on him at the time of the wage earner's death. 42 U.S.C. § 402(d)(1)(C)(ii) and § 416(e).

Under § 416(e), the term "child" includes a person's natural children and his legally adopted children. The section further describes when a child is deemed legally adopted:

[A] person shall be deemed, as of the date of death of an individual, to be the legally adopted child of such individual if such person was at the time of such individual's death living in such individual's household and was legally adopted by such individual's surviving spouse after such individual's death but only if (A) proceedings for the adoption of the child had been instituted by such individual before his death, or (B) such child was adopted by such individual's surviving spouse before the end of two years after (i) the day on which such individual died or (ii) August 28, 1958; except that this sentence shall not apply if at the time of such individual's death such person was receiving regular contributions toward his support from someone other than such

individual or his spouse, or from any public or private welfare organization which furnishes services or assistance for children.

Tsosie's applications for mother's and child's insurance benefits were denied initially by an administrative law judge and again, after a hearing, by the Secretary. The Secretary denied the claims because Alfred did not meet the definition of "child" under the literal terms of 42 U.S.C. § 416(e). This determination was based on the finding that, at the time of Frank's death, Alfred (1) had not yet been adopted, and (2) was receiving regular and substantial assistance from sources other than the wage earner or his spouse. The district court affirmed the administrative decision, and this appeal followed.

A. Operation of the Statute

1. *Applicability of the "regular contribution" exclusion.* We deal first with appellant's contention that the Secretary erroneously construed § 416(e) to mandate denial of benefits in this case. Appellant argues that Congress did not intend the section's exclusion of after-adopted children receiving regular outside contributions to disqualify children whose adoption proceedings were instituted before the death of the wage earner.[1] Appellant supports this proposition with the following isolated fragment of legislative history:

The committee believes it is reasonable to presume that where a worker initiated adoption proceedings, . . . prior to the worker's death, the child lost a source of support on the death of the worker.

S.Rep. No. 744, 90th Cong. 1st Sess. *reprinted in* [1967] U.S.Code Cong. & Ad.News, 2834, 2927. From this sentence appellant infers that Congress believed that predeath commencement of adoption proceedings alone demonstrates a child's dependence on the wage earner and that, therefore, Congress did not intend the "regular contribu-

---

1. Appellant contends her situation is governed by the terms of § 416(e)(A), in which "proceedings for the adoption of the child had been instituted by [the wage earner] before his death," even though in this case the proceed-ings instituted before Frank's death also were terminated before his death, and new proceedings that ultimately led to adoption were commenced by Bessie after Frank's death.

tions" exclusion to apply to adoption proceedings begun before the wage earner's death.

█ This reading disregards the statute's plain terms, which require application of the regular contributions exception to children whose adoption proceedings were commenced prior to the wage earner's death.

█ The isolated portion of legislative history and the tenuous inferences drawn from it on which appellant relies are insufficient to compel a result at odds with the statute's clear mandate. *See United States v. Oregon*, 366 U.S. 643, 648, 81 S.Ct. 1278, 1280, 6 L.Ed.2d 575 (1961); *Natural Resources Defense Council, Inc. v. EPA*, 507 F.2d 905, 915 (9th Cir. 1974); *Hagler v. Finch*, 451 F.2d 45, 48 (9th Cir. 1971), *cert. denied*, 405 U.S. 1071, 92 S.Ct. 1522, 31 L.Ed.2d 805 (1972); *Maun v. United States*, 347 F.2d 970, 976 (9th Cir. 1965). Even if Tsosie were correct regarding congressional intent, moreover, we have substantial doubts that the present case fits the category of adoptions *commenced but not completed* before the death of the insured wage earner. Although Frank and Bessie Tsosie initially commenced adoption proceedings in 1965 before Frank died, their petition was denied and dismissed shortly thereafter. More than five years later, after Frank had died, adoption proceedings were instituted by Bessie that led to the order of adoption in this case. But the proceedings leading to adoption were entirely separate from those begun by Frank and terminated before his death. The legislative history shows that Congress intended to expand the definition of children entitled to benefits to those whose adoption proceedings were pending at the time of the wage earner's death and were completed more than two years later. It is not clear, however, that Congress intended to extend benefits to the situation in which a prior attempt to adopt ended in failure and a new proceeding was instituted after the wage earner's death. S. Rept.

No. 744, 90th Cong., 1st Sess., *reprinted in* [1967] U.S.Code Cong. & Ad.News 2834, 2927. ("In some cases, a surviving spouse, due to circumstances beyond her control, is unable to *complete* within 2 years of the worker's death an adoption started before his death." (emphasis added)).

Even if, as appellant contends, Congress believed that the mere predeath institution of adoption proceedings constitutes some indicium of dependency, it is somewhat unlikely that Congress presumed such dependency would continue in the intervening years between adoption petitions. In this case, moreover, the earlier proceedings were terminated by reason of the natural parents' denying their consent, a circumstance that generally raises the legitimate inference that the natural parents recognized their obligation to support the child, thus eliminating the child's dependency on the insured.[2]

2. *Application of the exclusion to this case.* Appellant contends that the Secretary and the district court erred in concluding that the $43.20 per month Alfred received for four months preceding and five months following Frank Tsosie's death was regular and substantial, thus denying Alfred further benefits under § 416(e). The statute literally only requires that the benefits received be regular. 42 U.S.C. § 416(e). That provision has been interpreted to mean *regular and substantial* support to avoid what might otherwise be an unconstitutional presumption of loss of support. *Stowers v. Finch*, 323 F.Supp. 863, 864 (E.D. Cal.1971). The standard of regular and substantial support was applied by the Secretary in the present case to exclude Alfred from further benefits. *See also Carey v. Social Security Board*, 62 F.Supp. 458 (W.D.Ky. 1945).

█ Appellant first contends that the benefits were not regular because the AFDC payments began only four months before Frank Tsosie died and were termi-

---

2. The inference of continued dependency on Tsosie is warranted even though Kee and Mary Keese withdrew their consent to the adoption ostensibly because they were unwilling to permit Alfred's name to be changed to Tsosie. It is not evident, moreover, why they changed their minds after Frank Tsosie died and permitted the adoption.

nated five months later. For purposes of Social Security coverage, the time for assessing the regularity of the payments is at the time of the wage earner's death. Section 416(e) provides that after-adopted children "shall be deemed, *as of the date of death* of an individual [wage earner] to be the *legally adopted child of such individual*" unless "*at the time of such individual's death* such person was receiving regular contributions toward his support . . . ." (emphasis added). *Cf. Weinberger v. Salfi,* 422 U.S. 749, 767–68, 95 S.Ct. 2457, 2467–2468, 45 L.Ed.2d 522 (1975) (duration-of-relationship requirement triggered by date of wage earner's death). As the principal purpose of Social Security survivor's benefits is to replace support lost to the claimant by the death of the wage earner, *see, e. g., Flemming v. Nestor,* 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960), the inquiry must focus on the claimant's dependency on the wage earner prior to the latter's death and not on subsequent events.

It is apparent to us that at the time of Frank Tsosie's death the AFDC payments were being made to Alfred on a regular basis. They were "recurring" and were being paid at "stated or uniform intervals." Webster's Third New World Dictionary (1961). They were not occasional gifts. *Carey v. Social Security Board,* 62 F.Supp. 458, 460 (W.D. Ky.1945). Although they had commenced only four months earlier, the expectation at the time of Frank Tsosie's death was that they would continue each month for an indefinite period; indeed, they did continue for another five months after his death. It is unfortunate that they were paid for a period of only nine months and then were terminated by a ruling of the Arizona welfare agency, but that fact does not alter the regularity with which they were paid. There was no indication at the time of Frank's death that the state would change its position and terminate those benefits in the future.

■■■ Appellant further contends the Secretary erred in concluding that the benefits received by Alfred also were substantial within the judicially recognized meaning of the term. Although some courts have set flat rules to assess substantiality, *see, e. g., Levenson v. United States,* 157 F.Supp. 244, 250 (N.D. Ala.1957) and although other classifications of the Social Security Act itself measure substantiality by an objective formula, *see, e.g.,* 42 U.S.C. §§ 402(d)(4); 402(d)(8)(D)(ii); 402(d)(9); 402(f)(1)(D) (eligibility for benefits based on whether the beneficiary was receiving at least one half of his support from the insured wage earner, disqualifying those individuals receiving 51 per cent or more from an outside source), substantiality in the context of child support benefits must be determined on a case-by-case basis. As the court in *Stowers v. Finch* noted, the amount of support received from other sources will be considered substantial if "the loss of income from the death of the insured, while it may deprive the child-claimant of some support benefits will still leave her with enough income for support." 323 F.Supp. at 864.

Alfred Keese received $37.00 per month in AFDC benefits and $6.20 per month in social security benefits. We cannot say as a matter of law that the Secretary erred in concluding that $43.20 per month in benefits was substantial.[3] That figure constitutes approximately 77 per cent of the $56.00 Arizona had determined as the minimum necessary to meet a child's basic needs. Appellant adopts the state standard as the measure of substantiality. Accepting the state standard as the appropriate benchmark, we conclude that 77 per cent of

---

**3.** At oral argument appellant suggested that the Secretary erred in considering the $6.20 per month Alfred was receiving under social security. The Secretary argued that the payment was a contribution "toward his support from someone other than such individual or his spouse" because it was being paid by social security on behalf of the boy's real father. We agree with the Secretary, and reject appellee's contention that the social security payments were neither support payments from someone other than the deceased individual or his spouse, nor contributions from a public or private welfare organization.

that figure is considerable and comprises the "main part" of Alfred's support.[4]

Accordingly, we agree with the district court that the Secretary correctly determined that Alfred Keese is not eligible for child's insurance benefits under the terms of 42 U.S.C. § 416(e).

**B. Validity of the Classifications and Due Process**

■ The fifth amendment's due process clause prohibits the federal government from denying individuals equal protection of the laws. *Weinberger v. Wiesenfeld,* 420 U.S. 636, 638 n.2, 95 S.Ct. 1225, 1228 n.2, 43 L.Ed.2d 514 (1975); *Bolling v. Sharpe,* 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954). Appellant contends that the distinctions in 42 U.S.C. § 416(e) between natural children, legally adopted children and after-adopted children violates the due process clause in two respects. First, she claims that the statute unconstitutionally discriminates between two classes of after-adopted children, those who were receiving regular and substantial outside contributions toward their support at the time of the wage earner's death, and those after-adopteds who were not receiving such support. Second, she contends that the statute creates an arbitrary distinction between natural and adopted children on the one hand and after-adopteds on the other hand. We are not persuaded that the statute in any way establishes an invidious class or deprives the appellant of equal protection of the law.

■ At the outset we reject appellant's suggestion that the congressional classifications in this case are subject to more rigorous scrutiny than that accorded other economic legislation. The standard for testing the validity of Congress's Social Security classifications was clearly stated in *Flemming v. Nestor,* 363 U.S. at 611, 80 S.Ct. at 1373:

> Particularly when we deal with a withholding of a noncontractual benefit under a social welfare program such as [Social Security], we must recognize that the Due Process Clause can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification.

*Accord, Weinberger v. Salfi,* 422 U.S. 749, 768–72, 95 S.Ct. 2457, 2468–2470, 45 L.Ed.2d 522 (1975); *Richardson v. Belcher,* 404 U.S. 78, 84, 92 S.Ct. 254, 258, 30 L.Ed.2d 231 (1971); *Dandridge v. Williams,* 397 U.S. 471, 485–86, 90 S.Ct. 1153, 1161–1162, 25 L.Ed.2d 491 (1970); *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911). In *Salfi,* the Court resolved any confusion that may have resulted from language in prior cases, holding that a "noncontractual claim to receive funds from the public treasury enjoys no constitutionally protected status, . . . though of course Congress may not invidiously discriminate among such claimants on

---

**4.** Appellant suggests that because the payment does not constitute at least 100% of the amount set by the state as the minimum necessary to support a child, the payments cannot as a matter of law be considered substantial. Although the scale the appellant proposes may be considered one measure of substantiality, nothing in the Social Security Act indicates that Congress intended the Secretary to be bound by the state's determination in assessing substantiality. *Cf. Maloney v. Celebrezze,* 337 F.2d 231 (3d Cir. 1964); *Dupkunis v. Celebrezze,* 323 F.2d 380, 381 n.2 (3d Cir. 1963). In addition, there is no reason to believe that the support that the AFDC and other benefits were intended to replace were necessarily meant to be at the level the state considered a minimum. In fact, under the AFDC program, it is the state, within certain prescribed limits, that sets the level of benefits, and there is no require-

ment that the benefits provide 100 per cent of need. *See Jefferson v. Hackney,* 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972).

One difficulty in making the state standard an absolute determinant of substantiality rather than an approximate bench mark is illustrated by the fact that often the state sets more than one standard of minimum need. For example, Arizona has determined that $19.00 per month is the minimum amount a child needs monthly for support if enrolled in a boarding school. The district court record reveals that Alfred Keese was at relevant times enrolled in a boarding school and only returned home on weekends. Appellant paid no money to send him to school. Thus, even if the $19.00 figure were intended to cover a child who remained at school all week, the $43.20 per month received is substantial when measured against the latter state standard.

the basis of a 'bare congressional desire to harm a politically unpopular group,' . . . or on the basis of criteria which bear no rational relationship to a legitimate legislative goal." 422 U.S. at 772, 95 S.Ct. at 2470 (citations omitted).

Equal protection analysis "requires strict scrutiny of a legislative classification only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class." *See Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976) (footnotes omitted); *San Antonio School Dist. v. Rodriguez*, 411 U.S. 1, 16, 93 S.Ct. 1278, 1287, 36 L.Ed.2d 16 (1973). We already have observed that no fundamental rights are implicated by this case in such a way as to require strict scrutiny. As the class of after-adopted children receiving public or other outside assistance is not a suspect class, we must examine the statutory distinctions in light of the rational-basis standard reiterated in *Salfi*.

■ 1. *Distinctions among after-adopted children themselves.* The Social Security Act distinguishes between two groups of after-adopted children—those who receive regular, substantial outside support and those who do not. Only the latter group qualifies for child's insurance benefits under the Act. We find the classification is in direct relation to legitimate goals of Congress. It does not deprive after-adopted children who receive outside support either of due process or of equal protection, which is a component of the due process clause.

■ One of the principal purposes of the child's insurance program is to replace the support the child loses upon the death of the wage earner. It is apparent that Congress intended to make eligible for social

security benefits those after-adopted children actually supported by and dependent upon the deceased wage earner. *See, e. g.,* Report of the 1971 Advisory Council on Social Security, H. Doc. No. 92–80, 92d Cong., 1st Sess. (April 5, 1971);[5] *Jimenez v. Weinberger*, 417 U.S. 628, 634, 94 S.Ct. 2496, 2500, 41 L.Ed.2d 363 (1974); *Watts v. Veneman*, 476 F.2d 529 (D.C. Cir. 1973); *Davis v. Richardson*, 342 F.Supp. 588, 593 (D. Conn.), *aff'd* 409 U.S. 1069, 93 S.Ct. 678, 34 L.Ed.2d 659 (1972). This being so, different treatment to after-adopteds receiving regular and substantial outside support and, presumably, not dependent on the deceased wage earner, and after-adopteds who do not receive such outside benefits and who were most probably dependent on the wage earner with whom they lived is permissible.

■ Appellant does not seriously contend that dependency on the wage earner is an impermissible criterion for determining eligibility for benefits. Rather, she argues that the test of dependency incorporated into the statute—regular and substantial outside support as measured at the time of the wage earner's death—is not rationally designed to advance the legitimate purposes of the statute and is an invalid irrebuttable presumption. We reject this contention. In *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), the Supreme Court sustained a legislative presumption that marriages within nine months of a wage earner's death were entered into "not to enjoy its traditional benefits, but instead to enable one spouse to claim benefits upon the anticipated early death of the wage earner." 422 U.S. at 777, 95 S.Ct. at 2473. The Court concluded that with respect to noncontractual claims to Social Security benefits Con-

---

5. The Report states:

The purpose of the social security program is to provide a continuing income for a worker and his family when the worker's earnings are cut off by his retirement in old age, his disability, or his death. To accomplish this purpose, the program provides benefits not only for the worker himself but also for those of his relatives whom the worker normally

supports or has a legal obligation to support. Benefits are provided for these relatives because they lose support, or a potential source of support, when the worker's earnings are cut off.

Report of the 1971 Advisory Council on Social Security, H. Doc. No. 92 80, 92d Cong., 1st Sess. 22 (April 5, 1971).

gress may make such conclusive legislative presumptions that serve a rational purpose.

In the present scheme nondependency on the wage earner reasonably is presumed if the after-adopted child is receiving regular and substantial outside support at the time of the wage earner's death. Claimants are entitled to challenge whether certain outside support is regular and substantial. This lends flexibility to the concept of dependency. Once the receipt of regular and substantial outside support is established, however, nondependency is conclusively presumed and benefits are denied. We do not think it irrational to believe that if a child is receiving regular and substantial outside support, the child does not rely to any great extent on the wage earner or the wage earner's spouse for his support and, thus, is not dependent on the wage earner for social security purposes.[6]

Appellant's observation that there are standards other than regular, substantial outside support that may more accurately measure dependency does not invalidate the method chosen by Congress so long as the method chosen is rationally related to the purpose to be achieved. Although the standard adopted may prejudice some individuals who are actually dependent on the wage earner and yet are disqualified because they received regular and substantial outside support contributions for a short period corresponding to the wage earner's death, this does not invalidate the statute. "Perfection in making the necessary classifications is neither possible nor necessary." *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. at 314, 96 S.Ct. at 2567. That Congress chooses not to determine dependency more precisely through individualized assessment of need and existing sources of support is not to say that the

objective of assuring dependency is not rationally furthered by a substantial-outside-support limitation. It is only to say that, with regard to the interest of all concerned, Congress perhaps has not chosen the best means to accomplish this purpose. But in the area of economics and social welfare where rationality is the test, Congress "does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect." *Dandridge v. Williams*, 397 U.S. at 485, 90 S.Ct. at 1161. *Accord, Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 316, 96 S.Ct. 2562, 2568, 49 L.Ed.2d 520 (1976); *Weinberger v. Salfi*, 422 U.S. 749, 769–70, 95 S.Ct. 2457, 2468–69, 45 L.Ed.2d 522 (1975); *McGowan v. Maryland*, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961); *Metropolis Theatre Co. v. City of Chicago*, 228 U.S. 61, 69–70, 33 S.Ct. 441, 443, 57 L.Ed. 730 (1913); *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911).

Accordingly, we believe that the difference in treatment of two classes of after-adopted children is based on a standard that reasonably reflects and implements a legitimate legislative concern.

2. *Distinction between after-adopted and natural or adopted children.* Appellant further contends that the Social Security Act sets up an invalid distinction between those children whose adoptions were not completed until after the wage earner's death, and natural or adopted children. Specifically, under § 402(d)(3)(A), a natural or adopted child is presumed to be dependent on his parents without regard to actual dependency.[7] Under § 416(e), however, there is no such presumption for an after-adopted child who receives regular and sub-

---

**6.** Even though, notwithstanding the outside support, Alfred may in fact have lost some support due to Frank Tsosie's death, this fact does not require invalidation of the statute. Congress is not required to include within the coverage of its Social Security program all after-adopteds who are in fact partially dependent on a particular wage earner. *See Flemming v. Nestor*, 363 U.S. 603, 612, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435 (1960).

**7.** 42 U.S.C. § 402(d)(3) provides in pertinent part that a child is presumed to be dependent on his parents or adopting parents unless they were not living with him or contributing to his support and the child is neither the legitimate nor the adopted child of such individual or the child has been adopted by someone else.

stantial outside contributions toward his support.

The reasonableness of the distinctions becomes apparent when viewed in light of principles regarding social security programs. Generally, social security benefits are intended to aid dependents with whom the disabled wage earner had a legal or blood relation. No such relation or duty is involved between an insured worker and a child living in his home who is not adopted until after the worker's death. Despite this lack of a legal or family tie, Congress decided that such children should be beneficiaries of the insurance program if they are subsequently adopted and if they previously were being supported to a great extent by the wage earner and his spouse.

Under these circumstances, requiring after-adopteds to demonstrate that they were not receiving regular and substantial outside support contributions is reasonable. Congress could reasonably conclude that natural or prior adopted children, because of their legal or biological relationship to the wage earner, were more likely as a class to be dependent on the wage earner for their support. Accordingly, Congress was entitled to dispense with a particular inquiry regarding outside support or dependency as to that class of children. *See Weinberger v. Salfi*, 422 U.S. 749, 781–82, 95 S.Ct. 2457, 2474–2475, 45 L.Ed.2d 522 (1975). Conversely, Congress could reasonably conclude that children who had not been adopted at the time the wage earner died might be dependent for support on someone other than the wage earner and could adopt an administrative mechanism that utilizes this factor. The scheme comports with due process.[8]

We acknowledge that some natural or adopted children, not actually dependent on their parents, are eligible nevertheless for benefits and will receive a windfall because, unlike after-adopteds, they need not actually prove dependency. Congress could reasonably determine, however, that the risks of making payments to a few nondependents was outweighed by the savings inherent in avoiding case-by-case dependency determinations. Bowing to administrative convenience does not result in one class being denied a benefit to which it could otherwise be entitled. Rather, it permits a small number in one class to receive a windfall, but preserves to the complaining class the right to establish its eligibility.

Appellant's reliance on *Jimenez v. Weinberger*, 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974), is misplaced. In *Jimenez* the plaintiff successfully challenged the difference in treatment between illegitimates born after the onset of the wage earner's disability who could inherit, or were legitimated under state laws, or who were illegitimate only because of some formal defect in their parents' ceremonial marriage, all of whom could receive benefits under the Act, and other after-born illegitimates who were conclusively denied benefits. That holding turned on the observation that the latter class was as likely to be dependent for support on their parents as members of the former group, and the cri-

---

8. The different treatment between the two classes may also be justified in part by the desire to avoid spurious claims. Under the statutory scheme, an after-adopted child becomes eligible for benefits after they have accrued. Without some safeguards relating back to the time of the wage earner's death, significant abuse of the system would be possible. That this concern may have existed is supported by similar concerns in other contexts involving adoption under the Social Security Act. *See, e. g., Stanton v. Weinberger*, 502 F.2d 315 (10th Cir. 1974); *Morris v. Richardson*, 455 F.2d 775 (4th Cir. 1972), *cert. dismissed*, 410 U.S. 422, 93 S.Ct. 1408, 35 L.Ed.2d 394 (1973); *Gillums v. Secretary*, 331 F.Supp. 204 (D. Md. 1971). *Cf. Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) (duration-of-relationship requirement in marriages prior to death of wage earner motivated in part by concern over possible spurious marriages). The Senate Finance Committee's report on § 202(d)(8) is instructive:

[T]he committee believes that benefits for a child who is adopted by a worker already getting old-age or disability benefits should be paid only when the child lost a source of support because his parent retired or became disabled, and that the law should include safeguards against abuse through adoption of children solely to qualify them for benefits to. . . . .

S.Rep. No. 1230, 92d Cong., 2d Sess. 141 (1972).

teria for distinguishing the treatment received in no way served any legitimate purpose related to the Act.

In the present action, we have already observed that the criteria distinguishing the treatment of after-adopteds from other children are based on a standard that is reasonably related to dependency. Moreover, the classification in *Jimenez* involved legitimacy, which the Court has held is entitled to somewhat heightened review. *See United States v. Clark*, 445 U.S. 23, 100 S.Ct. 895, 63 L.Ed.2d 171 (1980); *Mathews v. Lucas*, 427 U.S. 495, 503–06, 96 S.Ct. 2755, 2761–2763, 49 L.Ed.2d 651 (1976); *Labine v. Vincent*, 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288 (1971). Finally, unlike the disadvantaged class in *Jimenez*, after-adopteds are not conclusively excluded from coverage by § 416(e), but may qualify for benefits if there is no substantially regular support from outside sources. Congress is not required to grant benefits to all after-adopted children merely because it granted benefits to some. So long as its classifications are free from irrational discrimination and reasonably related to the legitimate legislative goals, as they are here, it cannot be faulted for attacking part of a problem rather than the entire problem in deciding who will be eligible for survivor benefits. *See Geduldig v. Aiello*, 417 U.S. 484, 496, 94 S.Ct. 2485, 2491, 41 L.Ed.2d 256 (1974); *Dandridge v. Williams*, 397 U.S. 471, 486–87, 90 S.Ct. 1153, 1162–1163, 25 L.Ed.2d 491 (1970); *Williamson v. Lee Optical Co.*, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955).

AFFIRMED.