(No. 74406.—▮▮▮▮▮)

*In re* MARRIAGE OF CZARIST HENRY and JOSEPH HENRY, Appellee (The People of the State of Illinois *ex rel.* the Department of Public Aid, Appellant).

*Opinion filed October 21, 1993.*

HARRISON, J., took no part.

HEIPLE, J., dissenting.

Roland W. Burris, Attorney General, of Springfield, and William Haine, State's Attorney, of Edwardsville (Rosalyn B. Kaplan, Solicitor General, and Robert G. Toews, Assistant Attorney General, of Chicago, and Norbert J. Goetten, Stephen E. Norris and Gerry R. Arnold, of the Office of the State's Attorneys Appellate Prosecutor, of Mt. Vernon, of counsel), for appellant.

No appearance for appellee.

JUSTICE NICKELS delivered the opinion of the court:

The Illinois Department of Public Aid (Department), to which petitioner assigned her rights in this matter as a recipient of public aid (see 750 ILCS 15/2.1 (West 1992)), appeals the finding of the trial court that payment of a social security dependent disability allowance to the parties' minor daughter fulfilled respondent's child support obligation for those months during which the allowance was paid, a finding which the appellate court affirmed in an unpublished order (No. 5—89—0390 (unpublished order under Supreme Court Rule 23)). We allowed the Department's petition for leave to appeal (134 Ill. 2d R. 315) and now affirm the appellate court.

In 1981, Czarist Henry filed a petition to dissolve her marriage to respondent, Joseph Henry, which was granted. The judgment further required Joseph to pay $50 per week in child support for the parties' two children, Aaron and Cammee, born in 1968 and 1974 respectively. However, Joseph failed to meet his child support obligations, and as a result in 1983 and again in 1985, orders were entered for payment of the original amount of child support plus payment of an additional amount towards the arrearage. In addition, in 1985, an order for withholding and a turnover order against Joseph's State and Federal income tax refunds were entered.

In February 1989, Joseph contacted the trial court by letter, which the trial court treated as a petition for modification. Specifically, Joseph's letter indicated that Aaron, who was about to turn 21 years of age, had been self-supporting for three years. Joseph also indicated that he had been found disabled in October 1987 and that a social security dependent disability allowance well in excess of Joseph's child support obligation had begun at that time. Although Joseph himself had also been receiving public aid since 1987 and had contacted the Department in an attempt to obtain relief from his child support obligation, he continued to be charged with such obligation. His letter further indicated that between 1985 and 1987, his wages had been garnished as ordered and his tax refunds applied toward the arrearage. On this stipulated record, the trial court found that "it would be inequitable to find that [Joseph] did not fulfill his support obligation commencing October, 1987" when payment of the social security dependent disability benefits had begun, and accordingly Joseph's child support was only in arrears through September 1987.

The Department appealed, and the appellate court reversed and remanded for modification of the trial court's order. However, because Joseph had not filed a brief in

the appellate court, the trial court appointed counsel for the purpose of seeking a rehearing in the appellate court. The petition for rehearing was granted, the appellate court vacated its previous order and entered a modified order affirming the trial court's findings. As stated, the Department's petition for leave to appeal was granted.

The issue presented is not whether a trial court may retroactively modify or alter a previously entered order for child support. Dissolution of marriage and collateral matters such as child support are entirely statutory in origin and nature (*Strukoff v. Strukoff* (1979), 76 Ill. 2d 53, 60), and, in light of the legislature's clear pronouncement that "any judgment respecting maintenance or support may be modified only as to installments accruing subsequent to due notice by the moving party," a trial court has no authority to retroactively modify a child support order (750 ILCS 5/510(a) (West 1992)), unlike other States (see Mass. Ann. Laws ch. 208, §37 (Law. Co-op. 1981); Cal. Civ. Proc. Code §2705 (Deering 1984) (credit for social security disability payments required)). In contrast, the issue in the instant appeal is whether payment of a social security dependent disability allowance on behalf of the obligated parent satisfied such parent's child support obligation.

The Department relies on this court's decision in *Finley v. Finley* (1980), 81 Ill. 2d 317, together with precedent from the State of Washington, both of which in turn were the basis of the Appellate Court, Third District's decision in *In re Estate of Nakaerts* (1982), 106 Ill. App. 3d 166, on which the Department further relies. However, we conclude that the *Nakaerts* court, like the Department here, interpreted the holding of *Finley* too broadly.

In *Finley*, this court held that a parent obliged to make a single, undifferentiated child support payment

for several children could not unilaterally reduce such payment *pro rata* as each child reached majority. (*Finley*, 81 Ill. 2d at 329.) There can be no dispute that a decrease in the amount of child support works a modification of a support order (*Finley*, 81 Ill. 2d at 329), which is beyond the court's authority (750 ILCS 5/510(a) (West 1992)). In contrast in this instance, however, the trial court did not reduce the amount of child support. The trial court below expressly provided that the 1985 order of support continued in full force and effect. Thus, the trial court merely found that social security dependent disability benefits paid on behalf of the noncustodial parent satisfied that parent's child support obligation for the period such benefits were received, and only the method of payment, or payor, was changed. Our own provision for an order of withholding contemplates similar third-party payments on behalf of an obligated parent. 750 ILCS 5/706.1 (West 1992); see also *Sullivan v. Stroop* (1990), 496 U.S. 478, 488 n.3, 110 L. Ed. 2d 438, 448 n.3, 110 S. Ct. 2499, 2506 n.3 (Blackmun, J., dissenting, joined by Brennan & Marshall, JJ.).

Further, the rationale that the amount required to support a second child is incrementally less than that necessary to support one child supported this court's decision in *Finley*. Economists refer to such phenomena as economies of scale. Common sense resulted in the similar adage that two can live as cheaply as one. (See *Bowen v. Gilliard* (1987), 483 U.S. 587, 599-600, 97 L. Ed. 2d 485, 500, 107 S. Ct. 3008, 3016 (" 'common sense proposition that individuals living with others usually have reduced per capita costs because many of their expenses are shared' ").) Our own legislature has codified such commonsense and economic theory in the statutory guidelines for establishing child support, which reflect that 20% of a noncustodial parent's net income is necessary to support a single child, but that incrementally

only an additional 5% is needed for a second child. (750 ILCS 5/505(a)(1) (West 1992).) *Finley*'s logic, however, is not applicable in a situation such as this where only the method of payment was altered and the amount of child support remained unchanged.

Like the court in *Nakaerts*, the Department also further relies on precedent from the State of Washington. Washington is among the minority of jurisdictions that have held that credit for the payment of social security dependent disability allowances is an impermissible retroactive modification of a support order. (See *Hinckley v. Hinckley* (Wyo. 1991), 812 P.2d 907; *Arnoldt v. Arnoldt* (1990), 147 Misc. 2d 37, 554 N.Y.S.2d 396; *Guthmiller v. Guthmiller* (N.D. 1989), 448 N.W.2d 643; *Gerlich v. Gerlich* (Minn. App. 1986), 379 N.W.2d 689; *Zirkle v. Zirkle* (1983), 172 W. Va. 211, 304 S.W.2d 664; *In re Marriage of Cope* (1981), 291 Or. 412, 631 P.2d 781; *Fowler v. Fowler* (1968), 156 Conn. 569, 244 A.2d 375; *Chase v. Chase* (1968), 74 Wash. 2d 253, 444 P.2d 145.) However, the overwhelming majority of jurisdictions have held that payment of a social security dependent disability allowance paid on behalf of a noncustodial parent satisfied such parent's child support obligation. (See *Hanthorn v. Hanthorn* (1990), 236 Neb. 225, 460 N.W.2d 650; *Board v. Board* (Ky. 1985), 690 S.W.2d 380; *Justice v. Scruggs* (1985), 286 S.C. 165, 332 S.E.2d 106; *Bowden v. Bowden* (Ala. Civ. App. 1983), 426 So. 2d 448; *In re Marriage of Meek* (Colo. App. 1983), 669 P.2d 628, 630; *Children & Youth Services v. Chorgo* (1985), 341 Pa. Super. 512, 491 A.2d 1374; *Folds v. Lebert* (La. App. 1982), 420 So. 2d 715; *Mooneyham v. Mooneyham* (Miss. 1982), 420 So. 2d 1072; *Davis v. Davis* (1982), 141 Vt. 398, 449 A.2d 947; *In re Marriage of Denney* (1981), 115 Cal. App. 3d 543, 171 Cal. Rptr. 440 (statute expressly provides for credit for social security payments); *Newton v. Newton* (Mo. App. 1981), 622 S.W.2d 23;

*Lopez v. Lopez* (1980), 125 Ariz. 309, 609 P.2d 579; *Mask v. Mask* (1980), 95 N.M. 229, 620 P.2d 883; *Griffin v. Avery* (1980), 120 N.H. 783, 424 A.2d 175; *Perteet v. Sumner* (1980), 246 Ga. 182, 269 S.E.2d 453; *Potts v. Potts* (Iowa 1976), 240 N.W.2d 680; *Andler v. Andler* (1975), 217 Kan. 539, 538 P.2d 649; *Cash v. Cash* (1962), 234 Ark. 603, 353 S.W.2d 348.) Moreover, we find the logic of the Washington court in *Chase v. Chase*, on which both the Department and the *Nakaerts* court relied, flawed.

The *Chase* court ruled that receipt of social security dependent disability benefits was a change in circumstances, to be considered with all other circumstances and to be considered prospectively only. (*Chase*, 74 Wash. 2d at 259, 444 P.2d at 149.) The *Chase* court went on to list other possible circumstances, such as the noncustodial parent's receipt in the interim of an inheritance or retirement benefits, as examples of circumstances in which no credit for payment of social security dependent disability benefits would be warranted. (*Chase*, 74 Wash. 2d at 259, 444 P.2d at 149.) On the surface, such logic is appealing.

However, it was the *Chase* court's hypothetical circumstances, rather than the payment of social security dependent disability benefits, that actually supported its reasoning and conclusion that no credit for the payment of social security disability benefits on behalf of the obligated parent was warranted. Effectively, the *Chase* court relied on the hypothetical circumstances it created to *increase* the amount of support by an amount equal to the credit for payment of the social security dependent disability benefit on behalf of the obligated parent. However, because a modification to increase the amount of child support is permissible only prospectively, the effect of the *Chase* court's reliance on its hypothetical circum-

stances resulted in exactly the impermissible retroactive modification it sought to avoid.

Similarly, the *Chase* court also speculated that the noncustodial parent might originally have been independently wealthy. (*Chase*, 74 Wash. 2d at 259, 444 P.2d at 149.) In such a situation, a trial court's discretion would nevertheless be limited to an award of child support such that the child would continue to enjoy the standard of living she would have had if the marriage had not been dissolved, and any award in excess of such amount would be an abuse of discretion. (*In re Marriage of Scafuri* (1990), 203 Ill. App. 3d 385, 392-93.) Once the amount of child support has been determined to provide such continuity in the child's standard of living, payment of a social security dependent disability allowance would not permit a modification in the amount of support above that necessary to maintain the child's standard of living. *Scafuri*, 203 Ill. App. 3d at 392-93.

Finally, although inventive, such hypothetical circumstances as envisioned by the *Chase* court are hardly realistic. Rather, it is an inescapable conclusion that a determination of eligibility for social security dependent disability benefits occurs only when a parent becomes unable to generate income to meet his child support obligations. *Childerson v. Hess* (1990), 198 Ill. App. 3d 395, 399; *Schulze v. Jensen* (1974), 191 Neb. 253, 257, 214 N.W.2d 591, 594.

Although not cited by the Department, the United States Supreme Court in a divided opinion found that social security dependent benefits were not "child support payments" subject to the disregard provision under the Aid to Families with Dependent Children (AFDC) program of part A of title IV of the Social Security Act. (*Sullivan v. Stroop* (1990), 496 U.S. 478, 110 L. Ed. 2d 438, 110 S. Ct. 2499; 42 U.S.C. §602(a)(8)(A)(vi) (1988) ($50 of "child support payments" not included in com-

puting family income for purposes of receipt or recoupment of AFDC).) However, such conclusion was based on the Court's interpretation of the legislature's use of the term "child support" throughout the applicable provisions of title IV as a clear and unambiguous expression that only actual payments of support obligations by noncustodial parents were to be included. (*Sullivan*, 496 U.S. at 483-85, 110 L. Ed. 2d at 445-46, 110 S. Ct. at 2503-04.) Thus, the *Sullivan* Court did not look beyond the statutory language. (*Sullivan*, 496 U.S. at 485, 110 L. Ed. 2d at 446, 110 S. Ct. at 2504.) As the two dissents noted, however, such conclusion, although finding support in canons of statutory construction, contravened the nature and purpose of social security dependent benefits. *Sullivan*, 496 U.S. at 485-96, 110 L. Ed. 2d at 447-53, 110 S. Ct. at 2504-10 (Blackmun, J., dissenting, joined by Brennan & Marshall, JJ.); *Sullivan*, 496 U.S. at 496, 110 L. Ed. 2d at 453, 110 S. Ct. at 2510 (Stevens, J., dissenting).

The canons of statutory construction do not similarly limit our inquiry, however, because our legislature has given no indication in the Illinois Marriage and Dissolution of Marriage Act applicable here of such a narrow and constrained interpretation of the term "child support payments," and matters of child support and family law are the province of the States (see *Hisquierdo v. Hisquierdo* (1979), 439 U.S. 572, 581, 59 L. Ed. 2d 1, 11, 99 S. Ct. 802, 808). In addition, although dissolution and its collateral issues of support are purely statutory (*Strukoff*, 76 Ill. 2d at 60), such proceedings partake so much of the nature of a chancery proceeding that the rules of equity are applicable (*Finley*, 81 Ill. 2d at 332; *Bremer v. Bremer* (1954), 4 Ill. 2d 190, 192), and satisfaction of a support obligation from another source is an equitable defense (see *Mask*, 95 N.M. at 231, 620 P.2d at 885). Therefore, although modification of the

amount of child support is prohibited (750 ILCS 5/ 510(a)(West 1992)), a distinction exists between "crediting an obligation with payment made from another source and increasing, decreasing or terminating, or otherwise modifying a specific dollar amount" (*Board*, 690 S.W.2d at 381; *Hanthorn*, 236 Neb. at 230-31, 460 N.W.2d at 654), and whether a particular payment satisfies a parent's child support obligation focuses on a determination of how such payment is generated, by whom, and its purpose. Thus, unlike the majority in *Sullivan*, we are free to consider the nature and purpose of the social security dependent disability benefits.

The appellate court below relied on *Childerson v. Hess* (1990), 198 Ill. App. 3d 395, which was based on such analysis of the nature of social security disability benefits. The Department correctly notes that *Childerson* arose in the context of a challenge to the trial court's discretion to set the initial amount of support. However, the issue was resolved as a question of whether payment of social security dependent disability benefits satisfied a noncustodial parent's child 'support obligation, which is identical to the issue presented here.

Initially, we note that when payments are made voluntarily and are not made for the benefit of the noncustodial parent, such payments are merely gratuitous. (*In re Robinson* (1986), 151 Ill. App. 3d 214, 224-25.) In contrast, however, the right to social security benefits is earned. (*Flemming v. Nestor* (1960), 363 U.S. 603, 609, 4 L. Ed. 2d 1435, 1443, 80 S. Ct. 1367, 1372.) "[A] worker is *legally compelled* to set aside a portion of his wages in order to earn benefits used *to support his dependent children* in the event he becomes unable to do so himself." (Emphasis in original.) (*Sullivan*, 496 U.S. at 487, 110 L. Ed. 2d at 447, 110 S. Ct. at 2505 (Blackmun, J., dissenting, joined by Brennan & Marshall, JJ.).) Eligibility for social security benefits and the amount of

such benefits depends on "the earnings record of the primary beneficiary." (*Flemming v. Nestor* (1960), 363 U.S. 603, 609, 4 L. Ed. 2d 1435, 1443, 80 S. Ct. 1367, 1371.) Thus, social security dependent disability benefits are not gratuitous (*Childerson*, 198 Ill. App. 3d at 399; *Andler*, 217 Kan. at 542, 538 P.2d at 653), but are generated by the noncustodial parent through his labor and earnings.

The sole and express purpose of social security dependent benefits is to support dependent children. (*Jimenez v. Weinberger* (1974), 417 U.S. 628, 634, 41 L. Ed. 2d 363, 369, 94 S. Ct. 2496, 2500.) "[S]ocial security death benefits represent money earned and contributed through the efforts of a working parent ***, which payments, like the proceeds of an insurance policy, substitute as income to the worker's family should he *** become disabled." (*In re Marriage of Meek*, 669 P.2d at 630; *Childerson*, 198 Ill. App. 3d at 399.) "The fundamental nature of the social security system is a form of insurance in every sense of that word" with the premiums for such insurance paid by the employee in the form of deductions from his wages or salary throughout his working life. (*Childerson*, 198 Ill. App. 3d at 399.) Social security dependent disability benefits replace support the child loses upon the disability of the wage earner responsible for the child's support (*Tsosie v. Califano* (9th Cir. 1980), 630 F.2d 1328, 1337), and such benefits substitute for a parent's loss of earning power and obligation to support his dependents (*Schulze v. Jensen* (1974), 191 Neb. 253, 257, 214 N.W.2d 591, 594). Thus, the source and the purpose of social security dependent benefits are identical to the source and purpose of child support—both come from a noncustodial parent's wages or assets and both provide for the needs of the dependent child (*Sullivan*, 496 U.S. at 487, 110 L. Ed. 2d at 447, 110 S. Ct. at 2505 (Blackmun, J., dissenting, joined by Brennan

& Marshall, JJ.)), and, for our purposes, "no principal distinction exists between social security benefits and child support payments" (*Bradley v. Austin* (6th Cir. 1988), 841 F.2d 1288, 1296 (due process challenge)).

We conclude that because social security dependent disability benefits are earned by the noncustodial parent, made on behalf of such parent, and, in fact, paid at least in part with contributions from the noncustodial's own earnings, payment of social security dependent disability benefits satisfies a noncustodial parent's child support obligation. The judgment of the appellate court is affirmed.

*Affirmed.*

JUSTICE HARRISON took no part in the consideration or decision of this case.

JUSTICE HEIPLE, dissenting:

Joseph Henry, divorced in 1981, was under a court order to pay $50 per week in child support. He was delinquent. By 1987, his arrearages totaled nearly $10,000. In October of 1987, Joseph was determined to be disabled by the Social Security Administration and began to receive Social Security disability checks. His dependent child also began to receive a dependent's Social Security disability allowance in the amount of $421 per month. Later, in February of 1989, Joseph wrote to the trial court and requested that his child support order be modified. At that time, his arrearages exceeded $13,000.

The decision announced today establishes the principle that Joseph shall receive full credit *ab initio* for all Social Security payments made to his child in satisfaction of both his accumulated arrearages and his current support obligation without any necessity to obtain a modification of the child support order. This is new law for Illinois. It is also unfortunate. It amounts to a *sub*

*silentio* and retroactive modification of a child support order, previously deemed to be impermissible. See *In re Estate of Nakaerts* (1982), 106 Ill. App. 3d 166; *Chase v. Chase* (1968), 74 Wash. 2d 253, 444 P.2d 145.

The law has always been that a child support order could be modified upon application to the court when changed circumstances warranted a modification. That requirement was not and is not a serious or burdensome obligation to impose upon the parties. In the instant case, Joseph could have applied for a modification immediately upon the occurrence of his disability. He did not. Rather, he delayed for approximately 16 months before requesting a modification.

Adjustments such as this now have statewide application. They will take place automatically and silently. They will apply without any reference to changed circumstances either of the parent or the children. The trial court will not be advised. Confusion, uncertainty and misunderstandings will result. What other credits will apply to discharge child support obligations? Perhaps creative lawyers will tell us. If Joseph had purchased and given a lottery ticket to his child which came up a winner, would that discharge his delinquent obligations? Also ignored in this case is the precept that child support payments, though for the support of the child, belong to the custodial parent, not the child.

The legalisms and creative linguistics that were applied in this case to explain and justify what is presumably deemed to be an equitable result will have unforeseen and unfortunate results that will resound into the future. For the reasons given, I respectfully dissent.