PAGE, Justice
(dissenting).
I agree with the court’s opinion up to Part II.B. At that point, the court’s opinion goes off the rails. The court asserts that in County of Grant v. Koser, 809 N.W.2d 237, 244 (Minn.App.2012), the court of appeals “misinterpreted the child support statutes” because “[sjections 518A.34(f) and .31(c) are not independent mechanisms to offset an existing obligation by derivative Social Security benefits or to give credit for benefits received in excess of a newly modified order.” Instead, the court concludes that, because “derivative Social Security benefits are an integral part of the calculation of the child support order,” such benefits received are only considered to be in excess of the child support obligation upon notice of the motion to modify. Such a conclusion is inconsistent with the plain meaning of the unambiguous words .used in the child support statutes.
The child support statutes provide that “the court shall subtract the amount of [Social Security] benefits from the other parent’s new child support obligation” if such benefits “are received by one parent as a representative payee for a joint child based on the other parent’s eligibility.” MinmStat. § 518A.34(f) (2014) (emphasis added); see also Minn.Stat. § 518A.31(c) (2014) (specifying that Social Security benefits “shall also be. subtracted from the obligor’s net child support obligation” if benefits “are received by the obligee as a representative payee for the child” (emphasis added)). Based on this language, it is clear that we are not talking about an offset, but a reduction in the amount that an obligor is obligated to pay out of pocket for child support under sections 518A.34(f) and 518A.31(c) once derivative benefits are received. Neither section 518A.34(f) nor section 518A.31(e) suggest that the obli-gor’s net child support obligation is to be “offset” or otherwise reduced only after a modification of the original support order. Instead, they explicitly provide that the obligor’s net child support obligation is to be reduced upon the receipt of derivative Social Security benefits by the nonobligor parent. Thus, the triggering event is the receipt of the derivative benefits by the dependent or the nonobligor parent, not a motion by the obligor to modify the original support order. Once the triggering event occurs, the net obligation of the obli-gor to the dependent or nonobligor parent “shall” be reduced by the amount of derivative benefits and any amount paid by the obligor after the derivative benefits are paid constitutes an overpayment of child support benefits and should be returned to the obligor.[1]
*915 The court asserts that reducing the obli-gor’s net child support obligation upon the nonobligor’s receipt of derivative Social Security benefits, as required by statute, constitutes a retroactive modification of the child support order. Thus, according to the court, treating receipt of benefits as the triggering event would be patently unfair to the custodial parent and would violate federal and state laws that limit the retroactivity of child support modifications. The court’s retroactivity rationale has no merit.
The rationale has no merit because the derivative Social Security payment does not alter the obligor’s obligation to pay child support nor does it reduce the amount of child support received by the nonobligor parent. The only thing that changes is the source of a portion of the child support payment.[2] That is, the only thing being modified in this situation is the source of all or a portion of the child support payments; the obligor remains obligated for the full amount of child support set out in the child support order and the dependent or nonobligor parent still receives the full amount specified in the original support order. .A majority of state appellate courts have recognized the same principle. E.g., In re Marriage of Cowan, 279 Mont. 491, 928 P.2d 214, 220 (1996) (concluding, consistent with the “majority” rule, that “a credit for [derivative] Social Security benefits does not retroactively modify the disabled parent’s monthly child support obligation: it merely changes the source of the payments” (emphasis added)); Crago v. Donovan, 594 N.W.2d 726, 731 (S.D.1999) (concluding that the court “join[s] the majority rule holding that substitution of Social Security benefits for a disabled parent’s child support obligation does not constitute a retroactive modification of the original support order”). Notably, Minnesota’s child support statute does not require the obligor to meet his child support obligation with any specific source of funds. Moreover, derivative Social Security benefits, like direct child support *916 payments, originate in the obligor’s earnings and assets. See In re Marriage of Henry, 156 Ill.2d 541, 190 Ill.Dec. 773, 622 N.E.2d 803, 809 (1993) (“We conclude that because social security dependent disability benefits are earned by the noncustodial parent, made on behalf of such parent, and, in fact, paid at least in part with contributions from the noncustodial’s own earnings, payment of social security dependent disability benefits satisfies a noncustodial parent’s child support obligation.”). Therefore, the court’s repeated references to “retroactive modification” of the obli-gor’s child support obligation fundamentally mischaracterize the payment of derivative Social Security benefits to the child support recipient.
Dakota County argues that the court of appeals’ decision in Koser, which the court’s holding here overrules, created an inequitable result for the dependent children and nonobligor parent. The county ignores the inequity its holding produces for the obligor while overstating the unfairness to the obligee. In effect, the county assumes that, absent a motion to modify the child support obligation, the nonobligor parent has no notice that he or she is receiving an overpayment of the obligor’s child support obligation. It is difficult to understand how the nonobligor parent is not on notice of such overpayment — particularly in a case like this one, in which the nonobligor parent received derivative Social Security benefits in addition to the obligor’s regularly scheduled payment, with the result being that the nonobligor parent received nearly double the amount of child support originally ordered by the court. In order to avoid any inequity, either real or imagined,[3] the dependent or nonobligor parent need only avoid spending any amount received over and above the amount of court-ordered child support paid directly by the obligor.
At the same time, the county and the court minimize the inequity to the obligor by ignoring the fact that the obligor is not in fact obligated to pay the amount of derivative benefits received by the nono-bligor parent. The net effect of the court’s holding that the change in the obli-gor’s child support obligation is not effective until formalized by a motion to modify the support order will be that, in essentially every case involving derivative Social Security benefits, the child support obligor will pay more in child support than he or she is obliged to pay unless he or she resorts to self-help and withholds child support payments in anticipation of derivative benefits being paid. That is so because in every case there is a delay between the time when Social Security benefits are applied for and the time benefits are approved. There is a further delay between the time benefits are approved and the receipt of the first benefit payment, which will include payments retroactive to the date benefits were approved. See, e.g., Koser, 809 N.W.2d at 239 (noting that the obligor’s application for RSDI benefits were approved in May 2010 and the obligee received a lump-sum derivative benefits payment that covered the period from July 2009 through May 2010, for the time the benefits application was pending). Given the delays and the fact that there will be no basis for a motion to seek a reduction in benefits until the dependent or nonobligor parent has received derivative Social Security benefits, the court’s ruling will mean that an obligor will always be required to pay child support benefits not contemplated by the Legisla *917 ture’s statutory scheme and cannot receive credit for that overpayment. Such an absurd and inequitable result is inconsistent with the plain text of the statutes, and could not have been intended by the Legislature in adopting sections 518A.31(c) and 518A.34(f).
For these reasons, I respectfully dissent.

. The court takes issue with the fact that I do not identify a "mechanism” by which the obligor’s net child support obligation would be reduced upon receipt of derivative Social Security benefits by the dependent or the no-nobligor parent. The implication is that the court’s reading of the child support statute is somehow more correct because the court *915 specified a mechanism — a motion to modify. The court's reasoning suffers from significant flaws. First, as the court acknowledges, but then ignores, the "detailed statutory scheme” does not provide a mechanism by which the net child support obligation is reduced by the amount of derivative benefits. In other words, the court's "mechanism" is no more statutorily required than any other. Furthermore, I do not disagree that a motion to modify could be a valid means of formalizing the statutorily required reduction of the obli-gor's net child support obligation by the amount of derivative benefits. What I do disagree with is the court’s conclusion that derivative benefits received by the dependent or the nonobligor parent are only considered to be in excess of the obligation upon notice of the motion to modify. Whether there is a motion to modify the child support obligation has no bearing on whether there is an excess payment. An excess payment occurs when the obligor pays the monthly support obligation and the dependent or the nonobligor parent also receives, for that month, derivative Social Security benefits.
More importantly, as discussed more fully below, the amount of the obligor's net child support obligation is not reduced merely because derivative Social Security benefits are received by the dependent or nonobligor parent. Only the source of part or all of the monthly child support payment changes.

. I do not mean to say that the obligor is not required to pay out-of-pocket any amount of child support obligation that remains after derivative benefits are subtracted from the net child support obligation. Moreover, if the presumptive child support obligation ultimately increases because of the effect of security derivative benefits on the obligor’s gross income, the obligor would need to meet any increased obligation. The point is that, under Minn.Stat. §§ 518A.34(f), 518A.31(c), an obli-gor cannot be required to duplicate the portion of his or her obligation covered by derivative benefits received by the dependents or nonobligor parent.

. I strongly disagree with the county's suggestion that the dependent or nonobligor parent having to return the amount of money that a child support obligor overpays results in an inequity to the children or nonobligor parent.