NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 250402-U

NO. 4-25-0402

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 2, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE DEPARTMENT OF | ) | Appeal from the |
| HEALTHCARE AND FAMILY SERVICES | ) | Circuit Court of |
| *ex rel.* KATHY R., | ) | Sangamon County |
|     Petitioner-Appellee, | ) | No. 23FA3 |
|     v. | ) | |
| RICHARD L. H. JR., | ) | Honorable |
|     Respondent-Appellant. | ) | Jennifer M. Ascher, |
| | ) | Judge Presiding. |

JUSTICE VANCIL delivered the judgment of the court.
Justices Steigmann and Knecht concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The appellate court affirmed the trial court's child support order, holding (1) the
trial court had personal jurisdiction over respondent and (2) the trial court had
subject-matter jurisdiction.

¶ 2     This appeal arises from proceedings initiated by petitioner, the Department of
Healthcare and Family Services (HFS) *ex rel.* Kathy R., seeking to establish parentage of her three
minor children. In her petitions to establish parentage, petitioner alleged that respondent, Richard
H. Jr., was the father of each child. The trial court ultimately found respondent was the father of
two of the children, allocated parental responsibilities, and ordered him to pay child support. Over
two years later, respondent filed a motion to vacate the court's final order, which the court denied.
Respondent now appeals that decision. For the following reasons, we affirm the judgment of the
trial court.

¶ 3                                   I. BACKGROUND

¶ 4                          A. Initial Proceedings and Court Order

¶ 5          In January 2023, petitioner filed petitions in the trial court seeking to establish parentage of her three minor children. In each petition, she alleged that respondent was the father and that he was able to contribute financially to help support the children. On the same day petitioner filed her petitions, respondent filed his appearance in the case, as well as an application requesting the court waive fees. In February 2023, the court entered an order agreed upon by the parties, who were both present at the hearing and self-represented. The order stated that respondent was the legal and biological father of two of petitioner's children, granted him parenting time, and directed the parties were to schedule a genetic test for petitioner's third child.

¶ 6          The trial court held a status hearing in May 2023, at which the parties again represented themselves. The court's docket text entry stated that "DNA testing has occurred. Results pending." In June 2023, the court held a final hearing on the matter. Again, both parties appeared, representing themselves, and evidence was presented. The court took the matter under advisement.

¶ 7          The trial court then entered its order establishing parentage, allocating parental responsibilities, and setting child support. In the order, the court found that respondent was the legal and biological father of two of petitioner's children. After considering the limited testimony presented and acknowledging that petitioner had been "primarily responsible for performing the majority of caretaking and parental functions for the children for the past 24 months," the court found that it was "in the best interests of the children to allocate decision making for the areas of education, medical treatment and extra-curricular activities to Petitioner," as well as "[d]ecision making for the areas of schooling/ education, extra-curricular activities, religious training and medical decisions." Due to a previous order of protection being ordered against respondent in favor

of petitioner, the court noted it did "not anticipate the parties to be able to effectively engage in joint decision making." Nevertheless, the court ordered that respondent was to be made aware of all medical appointments, school calendars, parent-teacher conferences, and academic/extra-curricular activities, and he was also be listed as the children's parent with all schools and medical providers. Regarding parenting time, the court ordered that petitioner would have the majority of the parenting time. Both parties were ordered to complete the "Positive Co-Parenting" class and file proof of completion.

¶ 8 Moving to the issue of child support, the trial court found that respondent was unemployed but receiving unemployment insurance compensation. As a result, the court ordered him to pay the statutory minimum of $80 per month beginning on July 1, 2023. The order further instructed respondent to "conduct a job search conducting [*sic*] of at least 10 applications for employment per week." Finally, the court ordered that support would continue through the date of the emancipation of the youngest child.

¶ 9 B. Subsequent Proceedings

¶ 10 In January 2024, respondent filed a petition seeking to enforce the trial court's order against petitioner. In an affidavit supporting his petition, respondent alleged that petitioner refused to allow him to communicate with his children and see them as ordered and refused to "hand over paperwork for [the] children." In February 2024, respondent filed another appearance in the case and presented it to the court. The court set a hearing for later that month.

¶ 11 At the hearing on February 26, 2024, the trial court denied respondent's petition for rule to show cause. The parties testified at the hearing, and the court found petitioner's testimony credible and did not find her in contempt of court. The court admonished both parties regarding the provisions of the court's order, and petitioner was warned not to use her allocation of

decision-making in any attempts to decrease respondent's parenting time.

¶ 12    In August 2024, respondent filed a third appearance and a motion, again seeking relief against petitioner. The motion requested to "have [petitioner] give me my children as she agreed to in court order." Respondent then filed additional motions in the subsequent months, including a motion to modify child support, a motion to modify custody, a motion to "make changes to visitation order," a motion to "vacate order for 50/50 custody," and a motion to "vacate violation of court order."

¶ 13    In November 2024, respondent filed a document requesting "permission to make a special appearance" in order to challenge the trial court's personal jurisdiction over him. At a hearing on November 18, 2024, the parties withdrew all motions except respondent's motion to modify child support and petitioner's motion to modify visitation. A few days later, respondent filed a motion to "Grant [respondent] 50/50 Legal Joint Physical Custody" that also sought to "prove violation of court order on [petitioner], also parental alienation, fraud, aggravated identity theft."

¶ 14    The trial court entered an order denying respondent's motion to modify child support and petitioner's motion to modify parenting time. In its order, the court addressed respondent's argument that the court lacked jurisdiction to enter an order regarding child support because he was never properly served with a summons. However, the court pointed out that respondent signed and filed multiple appearances in the court and thus had consented to its jurisdiction. The court also stated, "Based on the evidence, the court orders that [respondent] is prohibited from discussing [petitioner] and members of her household with the minor children in a derogatory or negative manner. Further, [respondent] is prohibited from discussing these legal proceedings with the minor children."

¶ 15 Then, in December, respondent filed another motion, seeking to "press charges against [petitioner] for violation of court orders, parental alienation, child abuse, fraud, aggravated identity theft, to have my whole case, everything involving [Sangamon County case No.] 23FA3 assigned to another judge." The motion also sought to "appeal judgment from Nov. 22, 2024, and judgment from child support case held on Nov. 18, 2024." In January 2025, respondent filed a motion to "Recuse Jennifer M. Ascher from [case No.] 23FA0003," another motion seeking to modify child support and custody, and another motion challenging the court's personal jurisdiction over him. He then subsequently filed a petition for rule to show cause, alleging that petitioner refused to allow him to see the children over winter break and Christmas and that she told the school that he was not allowed to pick up the children.

¶ 16 In February 2025, HFS filed a petition to intervene on behalf of petitioner in the trial court. HFS also filed a petition to modify child support, as respondent's income had "substantially increased." After a hearing, the court issued an order denying respondent's request to modify parental decision-making responsibilities, as two years had not passed since entry of the order. See 750 ILCS 5/610.5(a) (West 2024). Furthermore, respondent did not present evidence establishing that the children's mental, moral, or physical health was seriously endangered or that their emotional development was significantly impaired. The court also noted that respondent did not present evidence that a change of circumstances necessitated a modification. The court rejected respondent's arguments that the fourteenth amendment (U.S. Const., amend. XIV) granted him the authority to have joint custody and that the children were a burden on petitioner.

¶ 17 In its order, the trial court next addressed petitioner's request to modify parenting time. First, the court found that a substantial change of circumstances occurred since the entry of the order in June 2023, specifically, that respondent picked up the children early on "his Fridays,"

usually between 9 a.m. and 11 a.m. Respondent argued he was allowed to do so because of the thirteenth amendment (U.S. Const., amend. XIII). He added that he had to pick them up early because he worked and was unable to pick them up at 3 p.m., when school released them. He also indicated that when the school attempted to prevent him from picking the children up early, he threatened to sue the school and call the police. The court considered this and concluded that it was not in the best interests of the children to miss alternative Fridays from school. Thus, the court modified respondent's parenting time by ordering him to pick the children up at 3 p.m., after school concluded. If the pick-up was not at the school, the parties would meet at the Springfield Police Department, and during the summer, respondent would pick up the children on the last day of school and keep them until two weeks prior to school resuming. Finally, the court found no evidence supporting respondent's petition for rule to show cause and denied it. All other pending motions were stricken by agreement of the parties.

¶ 18        At the end of February 2025, respondent filed a motion to terminate child support and reiterated his personal jurisdiction challenge. Respondent argued the child support order should be terminated because the order violated his "Due Process rights in deprivation of property interest" because the order was "entered without proper notice or decision by a neutral decision maker." Respondent again asserted that he was not properly served with the petition or notice of hearing. Respondent also asserted that his "rights to privacy under the Privacy Act [of 1974 (5 U.S.C. § 552a (2018)]" were violated because petitioner obtained confidential information about him without his consent or knowledge. Respondent also filed a motion entitled "Appeal Feb 18, 2023, judicial review of [case No.] 23FA0003" and another motion entitled "Recuse Jennifer Ascher from case, and assign child support case to Article 3 [(U.S. Const., art. III)] judge." The motion to substitute judge was ultimately withdrawn by respondent.

¶ 19        On March 3, 2025, respondent filed a motion to "Vacate Void Order from 6-22-2023," in which the trial court granted HFS's petition to intervene in the case. On March 26, the court held a hearing at which all parties were present. The court found that HFS's petition to intervene was provided to respondent in open court on February 14, 2025, and March 5, 2025, and, after argument, the court granted the HFS's petition. The court then denied respondent's motion to vacate, finding no basis to vacate the June 2023 order. The court noted that respondent advanced no other motions, and as such, they were withdrawn. The court then addressed HFS's petition to modify child support. Respondent refused to provide any testimony or evidence regarding his monthly gross income. HFS provided evidence of petitioner's and respondent's incomes, after which the court granted the petition. In an accompanying order, the court increased respondent's child support payments based upon evidence that there had been a substantial change in circumstances in that "Respondent's income substantially increased."

¶ 20        This appeal followed.

¶ 21        II. ANALYSIS

¶ 22        On appeal, respondent argues that (1) the trial court lacked personal jurisdiction, (2) the court lacked subject-matter jurisdiction, (3) the court committed fraud, (4) the court violated the separation of powers by exercising jurisdiction in this case, and (5) the failure to properly serve him deprived him of his constitutional rights under the fourth, fifth, sixth, seventh, and fourteenth amendments (U.S. Const., amends. IV, V, VI, VII, XIV).

¶ 23        Pursuant to Illinois Supreme Court Rule 311 (eff. Jul. 1, 2018), this accelerated case had a deadline of September 19, 2025. However, as both parties were granted extensions in filing their briefs, which delayed our review, we find good cause has been shown for going beyond that deadline.

¶ 24                                A. Forfeiture

¶ 25        At the outset, HFS argues that respondent has forfeited his arguments regarding the March 2025 order by failing to comply with Illinois Supreme Court Rule 341(h) (eff. Oct. 1, 2020) or, alternatively, because respondent failed to provide a complete record for review.

¶ 26        Rule 341(h) sets forth various requirements for an appellant's brief. For example, paragraph (h)(1) requires a "table of contents, including a summary statement, entitled 'Points and Authorities,' of the points argued and the authorities cites in the Argument." Ill. S. Ct. R. 341(h)(1) (eff. Oct. 1, 2020). HFS argues that respondent's brief specifically does not comply with paragraphs (h)(6) and (h)(7) (Illinois S. Ct. R. 341(h)(6), (h)(7) (eff. Oct. 1, 2020. Paragraph (h)(6) requires a "Statement of Facts, which shall contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal." Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020). Moreover, paragraph (h)(7) requires an "Argument" section, "which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020 . "Evidence shall not be copied at length, but reference shall be made to the pages of the record on appeal where evidence may be found." *Id.*

¶ 27        Respondent in this case is the appellant, and though his brief contains a section titled "Statement of Facts," it only contains brief factual allegations and statements lacking any reference to the record on appeal. It also, in further violation of Rule 341, contains argument.

¶ 28        HFS further contends that the incompleteness of the record is problematic in this case. Here, the record does not contain a report of proceedings with transcripts of the hearing on March 26, 2025, nor is there a bystander's report or agreed statement of facts. As HFS points out, without a record of what was argued at the hearing, this court's ability to review the trial court's

- 8 -

judgment is hindered.

¶ 29        In his reply brief, respondent seemingly misses the point of HFS's argument and Rule 341(h). He argues that he complied with the rules, that the record before this court is sufficient for review, and that any gaps in the record are by no fault of his but are rather the fault of the trial court. This is respondent's entire rebuttal to HFS's argument.

¶ 30        "The rules of procedure concerning appellate briefs are not mere suggestions, and it is within this court's discretion to strike the [appellant's] brief for failing to comply with Supreme Court Rule 341." *Crull v. Sriratana*, 388 Ill. App. 3d 1036, 1045 (2009). Moreover, the appellant "has the burden of providing a sufficiently complete record to allow meaningful review of the issues on appeal," and a "reviewing court cannot review a trial court's factual findings or bases for its legal conclusion without a record of the proceeding"; as such, "[a]ny doubt arising from the incompleteness of the record must be resolved against the appellant." *Pekin Insurance Co. v. Campbell*, 2015 IL App (4th) 140955, ¶ 26.

¶ 31        Based upon the foregoing principles of our court, it is well within our discretion to dismiss respondent's arguments based on these deficiencies. However, because respondent is proceeding *pro se* and the resolution of his arguments is straightforward, we will address the merits of his appeal. However, as stated, "any doubt arising from the incompleteness of the record must be resolved against the appellant." *Id.*

¶ 32                                    B. Standard of Review

¶ 33        Our supreme court's general rule in civil cases is that appellate courts review legal issues *de novo* and factual issues under a manifest weight of the evidence standard. See *Samour, Inc. v. Board of Election Commissioners of the City of Chicago*, 224 Ill. 2d 530, 548 (2007).

¶ 34                                    C. Personal Jurisdiction

- 9 -

¶ 35        First, respondent argues that the trial court lacked personal jurisdiction over him. Respondent cites *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), *Pennoyer v. Neff*, 95 U.S. 714 (1877), and *Simon v. Southern Ry. Co.*, 236 U.S. 115 (1915), for the proposition that, because he was not properly served, the June 2023 order entered against him was void. Setting aside the fact that most of the quoted material in respondent's brief from these cases does not exist as quoted, respondent's argument is misinformed.

¶ 36        "Personal jurisdiction refers to the court's power to bring a person into its adjudicative process." (Internal quotation marks omitted.) *People ex rel. Alvarez v. $59,914 United States Currency*, 2022 IL 126927, ¶ 19. "A respondent *** may consent to personal jurisdiction by his appearance, *or* *** by effective service of summons." (Emphasis added). *In re M.W.*, 232 Ill. 2d 408, 426 (2009); see *In re Marriage of Tronsrue*, 2025 IL 130596, ¶ 34 (holding that the trial court had personal jurisdiction over a respondent in a dissolution of marriage action because the respondent consented by filing an appearance).

¶ 37        During this case, respondent filed three appearances: one on January 15, 2023, another on February 9, 2024, and a third on August 15, 2024. Therefore, he consented to the trial court's jurisdiction. See *M.W.*, 232 Ill. 2d at 426. Even looking at the cases respondent relies on, further examination shows that the reason for requiring notice is to afford a respondent enough time to make an appearance and present a defense. See *Mullane*, 339 U.S. at 314 ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, *to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections*. [Citations.] The notice must be of such nature as reasonably *to convey the required information* [citation], and *it must afford a reasonable time for those interested to make their appearance*." (Emphases added.));

see also *Simon*, 236 U.S. at 132 ("As the company made no appearance, the default judgment was void."). Here, even assuming that respondent did not receive actual notice, he made his appearance and made arguments in court in his interest, and therefore, fulfilled the purpose of personal jurisdiction.

¶ 38    However, as HFS points out, there are further grounds supporting the conclusion that respondent consented to personal jurisdiction. Respondent filed numerous motions in the case requesting remedy from the trial court. Section 2-301(a-6) of the Code of Civil Procedure (735 ILCS 5/2-301(a-6) (West 2024)) provides that a party filing any other pleading or motion prior to the filing of a motion objecting to the court's jurisdiction over the party's person as set forth in subsection (a) waives all objections to the court's jurisdiction over the party's person prospectively unless the initial motion filed is either (1) a motion for an extension of time to answer or otherwise plead or (2) a motion filed under section 2-1301, 2-1401, or 2-1401.1 (*id.* §§ 2-1301, 2-1401, 2-1401.1). "This is to prevent a party from simultaneously invoking and denying jurisdiction." *King v. Find-A-Way Shipping, LLC*, 2020 IL App (1st) 191307, ¶ 19. Furthermore,

> "[a]lthough a special appearance enables a party to present his challenge to jurisdiction without thereby creating it and waiving the point [citation], the rule in Illinois for many years has been that a special appearance is waived when a party raises a defense [citation], makes a motion, files a pleading or takes any other step which the court would have no power to dispose of without jurisdiction of his person. [Citation.] *Any* action taken by a party which invokes the court's power to adjudicate an issue is deemed to be a submission to jurisdiction of the court." (Emphasis in original.) *Greene v. Board of Election Commissioners of the City of Chicago*, 112 Ill. App. 3d 862, 868 (1983).

¶ 39    Although respondent filed requests to make special appearances to challenge the trial court's jurisdiction, the record reflects that these requests were made after he made his initial appearance and filed various motions seeking relief. This is not a situation where respondent entered one special appearance at the beginning of the case solely to contest personal jurisdiction.

¶ 40    Respondent also alleges that the trial court committed fraud by submitting false information and/or fabricating proof of service to gain jurisdiction. Respondent provides no further factual basis for this argument and points to nothing in the record to support it. While the record shows that respondent filed motions and petitions alleging fraud, it is unclear whether this issue was actually adjudicated by the trial court. For these reasons, we reject this contention.

¶ 41    We also address respondent's argument that his constitutional rights were infringed upon due to improper service. Respondent does not sufficiently explain how any of his constitutional rights were violated. He asserts his (1) fourth amendment right was violated because evidence was seized without a warrant or probable cause, (2) fifth and fourteenth amendment rights were violated because he was denied due process, and (3) sixth and seventh amendment rights were violated because he was denied his confrontation rights and right to trial by jury. However, respondent does not provide any facts or citation to evidence in the record to support these contentions. Even assuming that notice and service were improper, as we have explained, respondent still entered appearances, made arguments in court, and asked for affirmative relief against petitioner. We find nothing in the record before us demonstrating that respondent was prejudiced by lack of service or that any of respondent's rights were violated by the trial court. "Appellate courts are not depositories where litigants may dump the burden of argument and research; they are entitled to have the issues clearly defined and a cohesive legal argument presented." *In re Marriage of Hundley*, 2019 IL App (4th) 180380, ¶ 82. We will not continue to

speculate as to his argument here and reject it.

¶ 42                     D. Subject-Matter Jurisdiction

¶ 43        Next, respondent argues the trial court lacked subject-matter jurisdiction "over the child support matter." "Subject-matter jurisdiction refers to a court's power to 'hear and determine cases of the general class to which the proceeding in question belongs.' " *Alvarez*, 2022 IL 126927, ¶ 19. A fundamental aspect of our nation's legal system is that "matters of child support and family law are the province of the States." *In re Marriage of Henry*, 156 Ill. 2d 541, 549 (1993). Generally, Illinois courts' subject-matter jurisdiction is conferred by the Illinois Constitution. *In re Luis R.*, 239 Ill. 2d 295, 300 (2010). The Illinois Constitution provides that trial courts "shall have original jurisdiction of all justiciable matters," with two exceptions that are not applicable here. Ill. Const., art. VI, § 9.

¶ 44        Our supreme court has explained that

"a justiciable matter is a controversy appropriate for review by the court, in that it is definite and concrete, as opposed to hypothetical or moot, touching upon the legal relations of parties having adverse legal interests. [Citation.] To invoke a circuit court's subject matter jurisdiction, a petition or complaint need only allege the existence of a justiciable matter. [Citation.] Indeed, even a defectively stated claim is sufficient to invoke the court's subject matter jurisdiction, as subject matter jurisdiction does not depend upon the legal sufficiency of the pleadings. [Citation.] In other words, the only consideration is whether the alleged claim falls within the general class of cases that the court has the inherent power to hear and determine. If it does, then subject matter jurisdiction is present." (Emphasis omitted and internal quotation marks omitted.). *Luis R.*, 239 Ill. 2d at 301.

¶ 45        Here, the trial court clearly had subject-matter jurisdiction over the child support matter. Petitioner filed a petition seeking to establish parentage and alleged that respondent was the father of the children and that he was able to financially contribute. Section 603(a) of the Illinois Parentage Act of 2015 (Parentage Act) (750 ILCS 46/603(a) (West 2022)) clearly states that "[t]he circuit courts of this State shall have jurisdiction of an action brought under this Act." Pursuant to section 801(a) of the Parentage Act, "pending the outcome of a judicial determination of parentage, the court shall issue an order for child support upon motion by a party and a showing of clear and convincing evidence of parentage." *Id.* § 801(a).Furthermore, section 802(a) states that a "court shall issue an order adjudicating whether a person alleged or claiming to be the parent is the parent of the child" and that the "judgment shall contain or explicitly reserve provisions concerning any duty and amount of child support." *Id.* § 802(a). Moreover, section 102 plainly states that "Illinois recognizes the right of every child to the physical, mental, emotional, and financial support of his or her parents." *Id.* § 102. The court also had proper subject matter jurisdiction over the entire child support matter, including any later modifications. See *id.* § 808.

¶ 46        Respondent argues that the trial court did not have subject-matter jurisdiction because petitioner never filed a petition for child support. Again, respondent's argument is misplaced. He cites *Ex parte McCardle*, 74 U.S. 506 (1868), and sections 1738A and 1738C of the United States Code (28 U.S.C. §§ 1738A, 1738C (2018)). However, he provides no reasoning or argument as to how they apply to his case. It is difficult for us to understand respondent's argument because of this. *McCardle* stands for the proposition that the United States Supreme Court's appellate jurisdiction is conferred by the U.S. Constitution, "with such exceptions and under such regulations as Congress shall make." (Internal quotation marks omitted.) *McCardle*, 74 U.S. at 513. We see no connection between *McCardle* and our state's trial courts' jurisdiction

over family law matters, which are inherently in the jurisdiction of the state. Moreover, we struggle to see the application of sections 1738A and 1738C, which are federal statutes mandating full faith and credit of public acts and documents between the different states, and we will not speculate as to what his argument is meant to be. To the extent respondent is seeking to challenge the validity of the child support order based on the state's proper jurisdiction, this section and the previous section of this order plainly explain that the trial court had proper jurisdiction, both personal and subject-matter.

¶ 47          Finally, we address respondent's argument regarding the separation of powers doctrine. As with many of respondent's other arguments, he does not explain his contention; he merely cites another nineteenth century case, *Marbury v. Madison*, 5 U.S. 137 (1803), but does not explain how it applies to the case before us. As such, respondent has forfeited this argument.

¶ 48                                     III. CONCLUSION

¶ 49          For the reasons stated, we affirm the trial court's judgment.

¶ 50          Affirmed.